UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



SEP 18 2002

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| JERRY W. BENDER,<br><br>                Plaintiff,<br><br>vs.<br><br>DONEEN HOLLINGSWORTH, South Dakota Secretary of State, in her individual and official capacities; JEFFREY BLOOMBERG, Secretary, Department Of Corrections, in his Individual and official capacities; DOUGLAS L. WEBER, Warden, South Dakota State Penitentiary, in his Individual and official capacities; OWEN SPURRELL, Associate Warden, South Dakota State Penitentiary, in his individual and official capacities; ROBERT DOOLEY, Warden, Mike Durfee State Prison, in his official capacity; EUGENE REGIER, M.D., in his individual and official capacities; SIOUX VALLEY HOSPITAL; KELLY PICKNER, Officer, Mike Durfee State Prison, in her individual capacity; TAMMY DOYLE, Officer, Mike Durfee State Prison, in her individual capacity; DOUG WYNIA, Counselor, Mike Durfee State Prison, in his individual capacity; BOB KURLY, Counselor, Mike Durfee State Prison, in his individual capacity; KAY WILKA, Nursing Director, in her individual capacity; KEVAN MERVERN, Case Manager, Mike Durfee State Prison, in his individual capacity; DARYL SLYKHUIS, Assistant Warden, Mike Durfee State Prison, in his | CIV. 01-4151<br><br><br><br>AMENDED COMPLAINT |

| | |
|---|---|
| individual capacity; TROY PONTO, Unit Manager, Mike Durfee State Prison, in his individual capacity; and AMY BIRTHALSON, Unit Manager, Mike Durfee State Prison, in her individual capacity; GREG ZIKES, Physician's Assistant, in his individual and official capacities; KAY PAA, Nurse, in her individual and official capacities; RHONDA MILLER, nurse, in her individual and official capacities; and OTHER UNKNOWN STATE PERSONNEL in their individual and official capacities; | * * * * * * * * * * * * * * * * * |
| Defendants. | * * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Comes now the Plaintiff, Jerry W. Bender, and for his causes of action, states and alleges as follows:

### GENERAL ALLEGATIONS

1. This Court has original and subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1343, 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

2. Jerry W. Bender is currently under the care and supervision of the South Dakota Department of Corrections, and is incarcerated at the South Dakota State Penitentiary, Sioux Falls, South Dakota ("Penitentiary"), the Redfield Trustee Unit, or the Yankton Trustee Unit.

3. At all times relevant Bender was an inmate at the Penitentiary, the Mike Durfee State Prison in Springfield, South

Dakota, The Redfield Trustee Unit, or the Yankton Trustee Unit.

4. Bender has exhausted his administrative grievance remedies or the Defendants' acts or omissions are of a continuing nature, making Bender's efforts to exhaust his administrative remedies futile.

5. Doneen Hollingsworth, Defendant, is Secretary of the South Dakota Department of Health which oversees the South Dakota State Penitentiary's Prison Health System.

6. Jeffrey Bloomberg, Defendant, is Secretary of the South Dakota Department of Corrections.

7. Douglas Weber, Defendant, is Warden at the Penitentiary.

8. Owen Spurrell, Associate Warden, is in charge of Prison Health Services at the Penitentiary.

9. Dr. Eugene Regier, Defendant, is Director of Health Services at the Penitentiary.

10. Kay Wilka, Defendant, was former Director of Health Services at the Penitentiary.

11. Dr. Eugene Regier, Defendant, is Director of Health Services at the Penitentiary.

12. Greg Zikes, Defendant, is a physician's Assistant at the Penitentiary.

13. Sioux Valley Hospital, Defendant, was at relevant times responsible for the care and treatment of Bender.

3

14. Robert Dooley, Defendant, is Warden at the Mike Durfee State Prison in Springfield, South Dakota.

15. Daryl Slykhuis, Defendant, is Assistant Warden at the Mike Durfee State Prison in Springfield, South Dakota.

16. Kelly Pickner, Defendant, is an officer at the Mike Durfee State Prison in Springfield, South Dakota.

17. Tammy Doyle, Defendant, is an officer at the Mike Durfee State Prison in Springfield, South Dakota.

18. Doug Wynia, Defendant, is a counselor at the Mike Durfee State Prison in Springfield, South Dakota.

19. Bob Kurley, Defendant, is a counselor at the Mike Durfee State Prison in Springfield, South Dakota.

20. Kevin Van Mervan, Defendant, is a case manager at the Mike Durfee State Prison in Springfield, South Dakota.

21. Troy Ponto, Defendant, is a Unit Manager at the Mike Durfee State Prison in Springfield, South Dakota.

22. Amy Birthalson, Defendant, is a Unit Manager at the Mike Durfee State Prison in Springfield, South Dakota.

23. Kay Paa, Defendant, is a nurse with Sioux Valley Hospital and/or the Penitentiary's Prison Health Services.

24. Rhonda Miller, Defendant, is Nursing Director for the Penitentiary's Prison Health Services.

25. Other unknown State Personnel are believed to be employed by the State's Executive Department, Department of

Health, or Department of Corrections.

26. All of Defendants' acts or omissions were committed under the color of State law.

COUNT ONE: 8th Amendment: Failure to Treat: Hepatitis.

27. Plaintiff realleges and incorporates paragraphs 1 through 26 as if set forth herein verbatim.

28. At all times relevant, Defendants knew that Hepatitis B and C are communicable viral infectious diseases which cause liver failure and death in some of the population.

29. In July, 1998, while incarcerated at the Yankton Trustee Unit, Bender tested positive for Hepatitis B and C.

30. In the Spring of 2000, testing revealed tenderness and alteration of Bender's liver's function.

31. From the Spring of 2000 until August, 2001, Bender's liver functioning continued to deteriorate due to Hepatitis C.

32. Bender was released on parole in May, 2000.

33. It is believed that while out on parole, Bender's liver condition stabilized.

34. Bender violated parole and was reincarcerated in August, 2000.

35. After returning to incarceration, Bender's liver functioning steadily deteriorated.

36. From August, 2000 until March, 2001, Bender made numerous requests for medical treatment regarding his Hepatitis

C condition.

37. On January 29, 2001, Bender submitted a Kite to Defendant Dr. Regier, requesting interferon treatment, or a combination of Peg-Intron and Ribavarin, for his Hepatitis C condition.

38. Defendant Zikes, with knowledge of Bender' medical condition, repeatedly prevented Bender from seeing Dr. Regier and taunted and swore at Bender for attempting to see him.

39. Defendant Paa, with knowledge of Bender's medical condition, refused to schedule doctor appointments for Bender to see Dr. Regier.

40. Defendant Miller refused to see Bender, and threatened to turn him in to security if he persisted in seeking treatment for his Hepatitis.

41. Defendant Wilka reviewed Bender's grievance about his failure to be able to obtain a medical appointment with Dr. Regier, dismissed it, and refused to schedule an appointment.

42. Defendants Zikes, Paa, Miller and Wilka's conduct constituted deliberate indifference to Bender' serious medical needs.

43. Bender was injured by Zikes, Paa, Miller and Wilka's deliberate indifference to his request to be examined by Dr. Regier for treatment of his deteriorating liver condition.

44. Defendants Pickner, Doyle, Wynia, Kurley, Van Mervan,

Ponto, and Birthalson refused to permit Bender to file Kites with requests for medical treatment or grievances for his failure to receive treatment or see medical personnel; or punished Bender for his requests for medical treatment or grievances for his failure to receive treatment or see medical personnel.

45. Defendants Pickner, Doyle, Wynia, Kurley, Van Mervan, Ponto and Birthalson's conduct constituted deliberate indifference to Bender's serious medical needs.

46. After seeing and examining Bender in March, 2001, Defendant Regier informed Bender to wait for Hepatitis treatment until April, 2001.

47. Subsequently, Defendant Regier informed Bender to wait for Hepatitis treatment until June, 2001.

48. On June 21, 2001, Bender filed a pro se complaint regarding the lack of medical treatment for, among other things, his Hepatitis C condition.

49. Not until August 14, 2001, did Defendant Dr. Regier schedule an outside consultation with Dr. Robert Meyer, who is believed to be a specialist in Hepatitis diseases.

50. After examining Bender, Dr. Meyer recommended that Bender undergo a liver biopsy.

51. Not until October October 17, 2001, did Defendant Dr. Regier release Bender for a liver biopsy.

7

52. Bender's liver biopsy revealed severe deterioration due to Hepatitis C. Bender's liver biopsy report stated that Bender had Chronic Hepatitis C, Grade 3, Stage 1, which is a condition that responds positively to interferon and/or Peg-Intron and Ribavarin treatments.

53. Without treatment, Bender's liver will eventually fail, resulting in death or the need for a liver transplant.

54. Schering-Plough Pharmaceutical Company manufactures Peg-Intron and Ribavarin.

55. Defendant Dr. Regier, along with perhaps other Defendants, unknown State personnel, and gastrointestinal doctors, met with Schering-Plough's pharmaceutical representatives regarding providing Bender and other prisoners with interferon, Peg-Intron and Ribavarin treatment for their Hepatitis C condition.

56. It is believed that Defendants Sioux Valley Hospital, Hollingsworth, Bloomberg, Weber, Dooley, Dr. Regier, perhaps other Defendants, and perhaps other unknown State personnel are aware of Bender's liver condition and his need for treatment.

57. It is believed that Defendants Sioux Valley Hospital, Hollingsworth, Bloomberg, Weber, Dooley, Spurrrell, Dr. Regier, perhaps other Defendants, and perhaps other unknown State personnel decided to deny Bender Peg-Intron and Ribavarin treatment, or interferon treatment for his liver condition.

58. In Mid-April, 2002, Defendant Regier told Bender that he never said Bender was a candidate for Hepatitis B or C treatment.

59. To the present, Bender has not been treated for his deteriorating liver condition, although Defendants Sioux Valley Hospital, Hollingsworth, Bloomberg, Weber, Dooley, Spurrell, Dr. Regier, perhaps other Defendants, and perhaps other unknown State personnel are aware that such treatment is necessary to prevent his death or need for a liver transplant.

60. Defendants Sioux Valley Hospital, Hollingsworth, Bloomberg, Weber, Dooley, Spurrell, Dr. Regier, perhaps other Defendants, and perhaps other unknown State personnel's conduct of refusing to provide Bender with treatment for his Hepatitis C condition constitutes deliberate indifference to his serious medical need.

61. Bender was injured thereby.

## COUNT TWO: 8TH Amendment: Failure to Inform.

62. Plaintiff realleges and incorporates paragraphs 1 through 61 as if set forth herein verbatim.

63. Bender had a right under the Eighth Amendment of the United States Constitution to know whether, after being exposed to Hepatitis B or C, he tested positive for either disease and could expose others to them.

9

64. Defendant Sioux Valley Hospital, Defendant Dr. Regier, and Defendant Wilka violated Bender's right to know whether, after being exposed to Hepatitis B or C, he tested positive for them and could expose others to them.

65. Defendant Sioux Valley Hospital's, Dr. Regier's, and Wilka's conduct rises to the level of deliberate indifference to Bender's serious medical need, in violation of the Eighth Amendment.

66. Bender was injured thereby.

COUNT THREE: 8TH Amendment: Wrong Prescriptions.

67. Plaintiff realleges and incorporates paragraphs 1 through 66 as if set forth herein verbatim.

68. In 1997, while working for the Prison System building housing, a sheetrock ceiling collapsed on Bender's head, causing significant head and neck pain.

69. Due to his head injury, Bender suffered extensive headaches.

70. Defendants Zikes and Dr. Regier regularly prescribed large dosages of acetaminophen and ibuprofen for Bender's headaches.

71. Defendants Zikes and Regier prescribed large dosages of acetaminophen and ibuprofen for Bender knowing he had Hepatitis C and such medications exacerbated his condition.

72. The large doses of acetaminophen and ibuprofen Defendants Zikes and Dr. Regier prescribed exacerbated Bender's diseased liver condition.

73. Defendants Zikes and Regier's conduct of prescribing medications they were aware would exacerbate Bender's diseased liver condition constitutes deliberate indifference to his serious medical need.

74. Bender was injured thereby.

## COUNT FOUR: Injunctive Relief: Testing.

75. Plaintiff realleges and incorporates paragraphs 1 through 74 as if set forth herein verbatim.

76. The Department of Corrections has no policy or procedure for the mandatory testing of prisoners who have been exposed to Hepatitis B or C.

77. The Department of Corrections has no policy or procedure for informing prisoners that they tested positive for Hepatitis B or C.

78. The Department of Corrections' failure to have a policy or procedure for the mandatory testing of, and informing, prisoners who have been exposed to Hepatitis B or C whether they have contracted either disease constitutes a condition of confinement in violation of the Eighth Amendment.

79. The Department of Corrections' failure to have a policy or procedure for the mandatory testing of, and informing, Plaintiff and other prisoners who have been exposed to Hepatitis B or C whether they have contracted either disease constitutes deliberate indifference to their serious medical needs.

80. Plaintiff and other similarly situated prisoners have no adequate remedy at law or otherwise for the harm or injury caused by Defendants sued in their official capacities should he and others not receive Hepatitis B and C testing after being exposed to inmates carrying the disease, and then be informed of the results of such testing.

81. The serious risk of harm to Plaintiff, and other similarly situated prisoners who have been exposed to Hepatitis B or C, without a permanent injunction ordering Defendants served in their official capacities to provide Hepatitis B and C testing, and to communicate the results of the tests, is high, in that they may be infected with a life threatening and communicable disease and infect others without knowing it.

### COUNT FIVE:  Injunctive Relief:  Treatment.

82. Plaintiff realleges and incorporates paragraphs 1 through 81 as if set forth herein verbatim.

83. Defendants' continual failure and refusal to provide Bender with Hepatitis C treatment constitutes a condition of confinement in violation of the Eighth Amendment.

84. Defendants' continual failure and refusal to provide Bender with Hepatitis C treatment constitutes deliberate indifference to Bender's serious medical needs.

85. Bender has no adequate remedy at law or otherwise for the harm or injury caused by Defendants sued in their official capacities should he be denied treatment for Hepatitis B and/or C, because the disease will destroy his liver without such treatment, resulting in the need for a liver transplant or death.

86. The serious risk of harm to Plaintiff without a permanent injunction ordering Defendants served in their official capacities to provide him with Hepatitis B and/or C treatment is high, in that his liver will continue to deteriorate, resulting in the need for a liver transplant or death.

87. Plaintiff will suffer irreparable harm, damage, and injury unless Defendants sued in their official capacities are not ordered to provide him with mandatory Hepatitis B and/or C treatment.

## COUNT FIVE: Punitive Damages.

88. Plaintiff realleges and incorporates paragraphs 1 through 87 as if set forth herein verbatim.

89. Defendants' conduct is willful and wanton, and undertaken with malice or intentional or reckless indifference to Plaintiff's right to be free from cruel and unusual punishment, entitling Plaintiff to punitive damages.

WHEREFORE, Bender prays that the Court orders relief as follows:

1. Awarding Plaintiff compensatory damages for Defendants' deliberate indifference to his serious medical needs regarding his Hepatitis.

2. Awarding Plaintiff compensatory damages for the denial of his Eighth Amendment right to know that he tested positive for Hepatitis B and C.

3. Ordering the Defendants named in their official capacities to institute mandatory testing procedures for testing inmates who have been exposed to Hepatitis B and C.

4. Ordering the Defendants named in their official capacities to institute mandatory procedures for informing inmates of the results of their testing for Hepatitis B and C.

5. Ordering the Defendants named in their official capacities to provide Plaintiff with Peg-Intron and Ribavarin or other similar and appropriate treatment for his Hepatitis B and C.

6. Awarding Plaintiff punitive damages as proven at trial.

7. Awarding Plaintiff his special damages as proven at trial.

8. Awarding Plaintiff his costs and disbursements.

9. Awarding Plaintiff his attorney fees under 42 U.S.C. § 1988.

10. Awarding Plaintiff such other relief as is just and equitable.

Dated this 17 day of September, 2002.

_____
Thomas W. Clayton
300 North Dakota Avenue, Suite 310
Sioux Falls, SD 57104-6026
605/331-2565

Attorney for Plaintiff Bender

TRIAL BY JURY REQUESTED

Bender requests a trial by jury on all issues triable of right to a jury.

_____

15