UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**
**SEP 2 9 2003**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JERRY W. BENDER,<br><br>        Plaintiff,<br><br>vs.<br><br>DONEEN HOLLINGSWORTH, South Dakota Secretary of State, in her individual and official capacities; JEFFREY BLOOMBERG, Secretary, Department of Corrections, in his individual and official capacities; DOUGLAS L. WEBER, Warden, South Dakota State Penitentiary, in his individual and official capacities; OWEN SPURRELL, Associate Warden, South Dakota State Penitentiary, in his individual and official capacities; ROBERT DOOLEY, Warden, Mike Durfee State Prison, in his official capacity; EUGENE REGIER, M.D., in his individual and official capacities; SIOUX VALLEY HOSPITAL; KELLY PICKNER, Officer, Mike Durfee State Prison, in her individual capacity; TAMMY DOYLE, Officer, Mike Durfee State Prison, in her individual capacity; DOUG WYNIA, Counselor, Mike Durfee State Prison, in his individual capacity; BOB KURLY, Counselor, Mike Durfee State Prison, in his individual capacity; KAY WILKA, Nursing Director, in her individual capacity; KEVAN MERVERN, Case Manager, Mike Durfee State Prison, in his individual capacity; DARYL SLYKHUIS, Assistant Warden, Mike Durfee State Prison, in his individual | CIV 01-4151<br><br><br><br>MEMORANDUM OPINION<br>AND ORDER |

| | |
|---|---|
| capacity; TROY PONTO, Unit Manager, | * |
| Mike Durfee State Prison, in his | * |
| individual capacity; and AMY | * |
| BIRTHALSON, Unit Manager, | * |
| Mike Durfee State Prison, in her | * |
| individual capacity; GREG ZIKES, | * |
| Physician's Assistant, in his individual | * |
| and official capacities; KAY PAA, Nurse, | * |
| in her individual and official capacities; | * |
| RHONDA MILLER, Nurse, in her | * |
| individual and official capacities; and | * |
| and OTHER UNKNOWN STATE | * |
| PERSONNEL, in their individual | * |
| and official capacities, | * |
| | * |
| Defendants. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is a Motion for Summary Judgment filed by Defendants Hollingsworth, Bloomberg, Weber, Spurrell, Dooley, Regier, Pickner, Doyle, Wynia, Kurly, Van Meveren, Slykhuis, Ponto, Berthelsen, Zike and Miller, Doc. 74. Also pending is a Motion for Summary Judgment filed by Defendants Sioux Valley Hospital, Paa and Wilka, Doc. 68. All parties have fully briefed the Motions.

Plaintiff concedes that Summary Judgment should be granted to Defendant Dr. Regier on Counts II, III, IV and V and that Summary Judgment should be granted to all other Defendants on all Counts. Plaintiffs remaining claim is Count I and Count VI against Defendant Dr. Regier. The Court will therefore order Summary Judgment on the claims conceded by Plaintiff. The Court will deny Summary Judgment on Count I and Count VI against Defendant Dr. Regier for the reasons set forth below.

## BACKGROUND

Plaintiff Jerry W. Bender ("Bender") has been an inmate in the South Dakota Corrections System on and off since approximately 1990. He served time at the South Dakota State Prisons in Sioux Falls and Springfield, and at the Trustee units in Redfield and Yankton. Bender was

2

incarcerated from October 31, 1990 through August 29, 1991. (Schiefen Aff. at 3.) He was again incarcerated from June 16, 1993 through November 28, 1995. (Id.) Bender was incarcerated again from August 19, 1997 through May 2, 2000. (Id.) He was reincarcerated on December 20, 2000. (Id.) Bender was released on parole on February 27, 2003. (Id.)

On July 2, 1998, while incarcerated at Springfield, Bender requested that he be tested for Hepatitis. He requested the test because he had used intravenous drugs and engaged in unprotected sex while out of prison. (Plaintiff's Stmt. of Mat. Facts, Doc. 86 at 15.) A test performed on July 10, 1998 revealed that Bender had Hepatitis B and C. (Defendants Hollingsworth et al Stmt. of Mat. Facts, Doc. 77, Ex. A, CLM test dated July 10, 1998.)

Hepatitis C is a viral infection that affects the liver. (Meyer Depo. at 25-26.) It is contracted by contact with blood or other bodily fluids. (Id. at 25.) Many people who are exposed to the virus develop an immunity to it. Others go on to develop chronic inflammation of the liver. (Id. at 25, 70-72.) Over a long period of time, this causes deterioration in the liver, cirrhosis, and end stage liver disease. (Id. at 20, 26, 60, 70-72.) The first treatment for Hepatitis C, Interferon, was developed approximately ten years ago. (Id. at 26.) Interferon treatment can completely eliminate the virus in some people. (Id. at 26, 72.) It is successful in ten percent to thirty percent of the cases. (Id. at 68-69.) PEG Interferon was developed recently and released as a treatment in early 2002.[1] (Id. at 13.) This is slightly more effective at treating the disease. (Id. at 69.) Interferon treatment takes six to twelve months to administer, and costs approximately $24,000. (Id. at 31-32, 34, 45, 66.) Follow-up laboratory work is also required six months after completion of the treatment. (Id. at 34, 66.)

On November 17, 1998 Bender attended a prison medical clinic for a chronic Hepatitis check. At this time a chronic HCV flow chart was started. (Plaintiff's Stmt. of Mat. Facts at 16.) On March 15, 2000, Bender had elevated ALTs, an indicator of advancement of the Hepatitis virus. (Id. at 21.)

---

[1] The Court will refer to Interferon, PEG Interferon and related treatments, collectively as "Interferon" in the remainder of this opinion.

3

On December 21, 2000 a blood test indicated that Bender's ALT level had declined significantly. (Id. at 24.) In general, Bender's ALT level has fluctuated significantly over time. (See generally Defendants Hollingsworth et al Stmt. of Mat. Facts, Ex. A.)

On March 8, 2001 Dr. Regier put in a "utilization request" with Sioux Valley Hospital, the provider for inmate care, requesting that Bender receive approval to be examined by Dr. Meyer, a specialist in gastroenterology. (Meyer Depo., page 8.) On May 17, 2001 Dr. Regier noted that Sioux Valley Hospital failed to act on the utilization request. (Plaintiff's Response to Hollingsworth, et al Motion for Summary Judgment, Doc. 84 at page 5.) Dr. Regier also noted that Sioux Valley Hospital was no longer the inmate care provider and that the Department of Corrections had taken responsibility for inmate care. Therefore, the utilization request needed to be repeated with the current care provider. (Id.) On May 23, 2001 Dr. Meyer examined Bender. (Meyer Depo. Ex. 6.) On August 14, 2001, Dr. Regier entered a utilization request for a liver biopsy for Bender. (Plaintiff's Response to Hollingsworth, Doc. 84. at 6.) Dr. Meyer examined Bender again on September 13, 2001. (Meyer Depo. Ex. 6.) On October 17, 2001 Bender underwent a liver biopsy to determine the extent of his liver damage. (Defendants Hollingsworth et al Stmt. of Mat. Facts, Ex. A, Sioux Valley Hospital pathology report dated October 18, 2001.) The biopsy revealed that his liver condition was at Grade III inflammation, Stage I fibrosis. (Meyer Depo. at 52). On November 21, 2001 Dr. Regier learned the results of Bender's liver biopsy. (Meyer Depo. Ex. 7.)

In addition to the steps listed above indicating Dr. Regier's active involvement in Bender's Hepatitis treatment, Dr. Regier also provided care for Bender's Hepatitis in numerous other ways. (See generally Defendants Hollingsworth et al Stmt. of Mat. Facts, Ex. A.) Dr. Regier prescribed anti-oxident vitamins to Bender as part of his Hepatitis treatment.[2] (Id.) Dr. Regier attended a meeting, arranged by Dr. Meyer, with a pharmaceutical company that sold Interferon. (Id. at 62.) The purpose of the meeting was to provide Dr. Regier with additional information about Interferon

---

[2] Dr. Meyer testified that he was not aware of any studies that demonstrate that use of anti-oxident vitamins has any beneficial effect for Hepatitis patients. (Meyer Depo. at 23-24, 30.)

4

treatments. (Id.) In addition, from March 2000 through August 13, 2002[3], Dr. Regier met with Bender a total of eighteen times. On seventeen of the eighteen times, Dr. Regier made notes indicating his active review of Bender's Hepatitis.

Dr. Meyer testified that Hepatitis patients with the following characteristics are generally considered candidates for Interferon treatment: there is some inflammation of the liver, fibrosis is at Stage I or higher, the patient is between the ages of 18 and 60, and the patient is alcohol and drug free. (Meyer Depo. at 27-28, 35.) Dr. Meyer testified that, based on the liver biopsy results and Bender's age, he would treat Bender with Interferon. (Id. at 54-55, Ex. 6.)

On further development of Dr. Meyer's testimony, it was clarified that there are several factors a physician considers when determining whether Interferon is an appropriate treatment for a Hepatitis patient. These factors include: 1) Interferon treatment is generally denied to persons who are alcoholics or substance abusers or are likely to resume previous alcoholism or substance abuse (Meyer Depo. at 28, 65-66.); 2) Physicians may withhold treatment from persons who suffer from depression or other psychological disorders because Interferon treatment has a depressive effect and exaggerates a person's suicidal tendencies (Id. at 39-40.); 3) Physicians may withhold Interferon treatment from persons who are already in the advanced stages of liver disease. (Id. at 57-58.) Once liver disease has reached an advanced stage, its damage cannot be reversed. (Id. at 58.) Interferon treatment, however, can halt advancement of the liver disease. (Id. at 58, 65.) Furthermore, Interferon treatment can cause further decomposition in the liver. (Id. at 47.) The record does not indicate that Bender suffers from any of these contraindications. (See generally Meyer Depo.) To determine whether a prisoner would receive a particular treatment for a disease, including the treatment of Hepatitis with Interferon, Dr. Regier must receive the approval of his supervisors. (Rost Depo. at 31.)

---

[3] Bender was not incarcerated from May 2, 2000 through December 20, 2000. The progress notes from the prison medical clinic stop on August 13, 2002. The Court is unsure whether Bender made no visits to the clinic between the time the progress notes stop and his release, or whether the record is incomplete.

5

Based on the above facts, the Amended Complaint brings six counts against the Defendants. Count I brings a claim under 42 U.S.C. §1983 alleging that Defendants Zikes, Paa, Miller, Wilka, Pickner, Doyle, Wynia, Kurley, Van Mervan, Ponto, Birthalson, Sioux Valley Hospital, Hollingsworth, Bloomberg, Weber, Dooley, Dr. Regier and unknown state personnel denied Plaintiff necessary medical treatment and that this violated his Eighth Amendment rights. Plaintiff concedes that Summary Judgment should be granted in favor of all Defendants except Dr. Regier on this Count. Count II brings a claim under 42 U.S.C. §1983 alleging that Defendants Sioux Valley Hospital, Dr. Regier, and Nurse Wilka violated Plaintiff's right to know that he had tested positive for Hepatitis B and C and that this violated his Eighth Amendment rights. Count III alleges Eighth Amendment violations due to Defendants Dr. Regier's and Zikes' alleged deliberate indifference to Plaintiff's serious medical need concerning treatment with incorrect medications. Count IV requests injunctive relief requiring the Penitentiary to develop procedures and provide testing to determine whether prisoners have contracted Hepatitis B or C. Count V requests injunctive relief requiring Defendants to provide treatment for Plaintiff's Hepatitis. Plaintiff conceded that Summary Judgment should be granted in favor of all Defendants on Counts II, III, IV and V. Count VI[4] requests punitive damages due to Defendants' alleged wilful and wanton behavior toward Plaintiff. Based on the above allegations, Plaintiff requests compensatory damages for denial of his Eighth Amendment rights and for Defendants' deliberate indifference to his serious medical needs, punitive damages, institution of mandatory procedures for testing prisoners for Hepatitis, that Defendants provide Plaintiff with appropriate treatment for his Hepatitis, plus special damages, costs and fees. The Court will only consider those claims which have not been conceded by the Plaintiff.

## DISCUSSION

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). In reviewing a motion for summary judgment, the Court views the evidence in a light most favorable to the non-

---

[4] Plaintiff's Amended Complaint labels two separate Counts as Count V. This Court will refer to the second of these Counts as Count VI.

6

moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial'" Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992) (quoting Fed. R. Civ. P. 56(e)).

> 42 U.S.C. §1983 provides:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, "to state a claim under §1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).

The Amended Complaint indicates Dr. Regier is being sued in both his official capacity and his individual capacity. (See Doc. 48, caption.) Any claim against the Defendant in his official capacity is a claim against the State of South Dakota. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Damages claims against the State are barred by the Eleventh Amendment. The Plaintiff conceded that Summary Judgment should be granted in favor of Defendants on all equitable claims. Because the only remaining claims are legal claims, summary judgment will, therefore, be granted to Defendant on any claim against him in his official capacity. See Kentucky v. Graham, 473 U.S. 159, 169 (1985) (absent waiver by the State of South Dakota or valid override by Congress, "the Eleventh Amendment bars a damages action against a State in federal court"); South Dakota Constitution, Article III, Section 27; SDCL §§ 3-22-17, (the State of South Dakota has not waived its Eleventh Amendment immunity for damages actions in federal court).

7

Although the official-capacity claims against Dr. Regier are barred by the Eleventh Amendment, "damages awards against individual defendants in federal courts 'are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.' That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." Hafer v. Melo, 502 U.S. 21, 30-31 (1991) (quoting Scheuer v. Rhodes, 416 U.S. 232, 238 (1974)). State officials sued in their individual capacities may assert personal immunity defenses such as qualified immunity. See Hafer, 502 U.S. at 25. Dr. Regier is clearly sued in his individual capacity. (See Amended Complaint, Doc. 37.) Therefore, the Court will consider the remaining claims against Dr. Regier in his individual capacity.

I. Eighth Amendment Violation

Bender alleges that Dr. Regier violated his Eighth Amendment right to be free from cruel and unusual punishment. The United States Supreme Court has recognized that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Estelle v. Gamble, 429 U.S. 97, 103 (1976). Consequently, the Court in Estelle held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Id. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). In this holding the Supreme Court set forth a two-part test to determine whether denying or delaying access to medical care or interfering with medical treatment of prisoners constitutes an Eighth Amendment violation.

The first prong of the test is that the Plaintiff must prove that he had a serious medical need or deprivation of that need. This is an objective determination. See Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995). The "need or the deprivation alleged must be either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." Id. (citations omitted).

The second prong of the Estelle test is that Bender must demonstrate that Dr. Regier was deliberately indifferent to his serious medical need. See Estelle, 429 U.S. at 103. This is a determination of Dr. Regier's subjective state of mind and "requires a finding of actual knowledge

8

on the part of the defendant." Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997) (citations omitted). "'Deliberate indifference includes something more than negligence but less than actual intent to harm'; it requires proof of a reckless disregard of the known risks." Moore v. Duffy, 255 F.3d 543, 545 (8th Cir. 2001) (citations omitted).

To prove his § 1983 claim, Bender must first demonstrate that he has a serious medical need. Bender has been diagnosed by a physician as having Hepatitis B and C. (Defendants Hollingsworth et al Stmt. of Mat Facts, Ex. A.) The deposition of Dr. Meyer establishes that Hepatitis B and C are serious medical conditions, which could lead to permanent liver damage and death. (Meyer Depo. at 20-21.) Bender has established that Hepatitis is a very serious medical condition, however, he must go further to satisfy this prong of the test.

In order to demonstrate that he had a serious medical need, Bender must go beyond demonstrating that he had Hepatitis, and must show that he had a serious medical need for Interferon treatment, and in this case, a deprivation of that need. See Aswegan, 49 F.3d at 464. Interferon is the only treatment for Hepatitis. (Meyer Depo. at 71.) Bender's Hepatitis was not treated with Interferon. Interferon is not an appropriate treatment for all Hepatitis patients, however, and may cause serious side effects in some people. (Meyer Depo. at 34-50, 64-66.) Dr. Meyer testified that Bender was a patient who he would treat with Interferon instead of delaying treatment. (Meyer Depo. at 54-55.) Defendants have not placed medical evidence in the record establishing a reason why Interferon treatment should be denied to Bender.

Defendants argue that Bender must place "verifying medical evidence" in the record demonstrating that "the defendants ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of injury in this case." (Dulaney v. Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997) (citations omitted). Furthermore, it is true that "[w]hen an inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of the delay." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (internal punctuation and citations omitted). Defendants indicate that these

9

authorities require Bender to prove that his liver function deteriorated as a result of the delay. When considering a condition such as Hepatitis, this is difficult as this Court understands that the only way to determine damage to the liver is with a biopsy. The prison has only biopsied Bender's liver once. Therefore, there is no baseline for determining the progression of the disease. The Eighth Circuit held that an inmate does not need to suffer actual harm to sustain an Eighth Amendment claim, but there needs to be "a substantial risk of serious future harm." Aswegan, 49 F.3d at 464. In this case, Bender presents evidence that the progression of Hepatitis can result in increasing liver damage and deterioration. (Meyer Depo. at 20.) Although in reference to another prisoner with a less advanced case of Hepatitis, Dr. Meyer indicated that it may be appropriate to delay treatment to determine if the disease will progress. (Id. at 28-29.) Specifically referring to Bender, however, Dr. Meyer stated that he would treat Bender with Interferon. (Id. at 54-55.) When considering the facts in the light most favorable to the Plaintiff, the Court finds that Bender has satisfied the first prong of the Estelle test.

In considering the second prong of the Estelle test, Bender must demonstrate that Dr. Regier exhibited deliberate indifference to his need for Interferon treatment in making the decision to withhold treatment from him. It appears from the record that Dr. Regier never made a formal request to the Department of Corrections to allow Bender to receive Interferon treatment. (Rost Depo. at 19-20, 30.) Therefore, this fact will be construed in favor of Bender, and for the purpose of the present Motions the Court will assume that Dr. Regier decided to not request Interferon treatment.

Defendants present evidence that a physician may choose to withhold Interferon treatment from a Hepatitis patient based on several factors concerning the patient's condition. In this case Dr. Regier has not placed evidence in the record specifically indicating why Bender is not a candidate for Interferon treatment. (See generally, Defendants Hollingsworth et al Stmt. of Mat. Facts, Ex. A; Meyer Depo. Ex. 5.) The United States Supreme Court has determined that matters of medical judgment are not proper subjects of an Eighth Amendment claim. See Estelle, 429 U.S. at 107. "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). "Prison officials can be found

10

free from liability if they responded reasonably to a risk, even if the harm ultimately was not averted. In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a questions of fact by merely stating that she did not feel she received adequate treatment." Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) (citations omitted).

Although Dr. Regier actively consulted with Bender and treated his Hepatitis, Dr. Regier has not provided evidence that denying Interferon treatment was a reasonable response to Bender's Hepatitis. Dr. Meyer stated that he would have provided Interferon treatment to Bender. (Meyer Depo. at 54-55.) Defendants do not present any medical evidence that there were reasons to withhold this treatment.[5] Because Dr. Regier has not identified in the record any reasons why Bender is not a candidate for Interferon treatment, Dr. Regier has not demonstrated that he made a medical judgment to withhold treatment. The Court acknowledges that mere negligence "does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. In construing the facts in the light most favorable to the Plaintiff, Dr. Regier's conduct demonstrates he knew of the seriousness of Hepatitis. Plaintiff is entitled to a jury trial on the issue of whether Dr. Regier's failure to treat Bender was a "reckless disregard of the known risks." Moore v. Duffy, 255 F.3d at 545. Therefore, Dr. Regier is not entitled to summary judgment on the merits of this claim.

II. Qualified Immunity

Dr. Regier claims that the Court does not need to reach the merits of the case because he is protected by qualified immunity and therefore, summary judgment should be granted in his favor. Prison officials are "protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Gregoire v. Class, 236

---

[5] Defendants assert that the current protocol for treatment of inmates with Hepatitis denies treatment for patients with less than 18 months remaining in their sentences. Although the protocol does establish this standard, the protocol was not in place until September 2002, well after it was established that Bender had Hepatitis.

11

F.3d 413, 417 (8th Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)). In Gregoire, the Eighth Circuit discussed the three part test to allow a plaintiff to overcome qualified immunity. "[T]he plaintiff must 'assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right.'" Id. (quoting Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998)).

Bender asserts a violation of his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment which protects him from prison officials' deliberate indifference to serious medical needs. See Estelle, at 105. For purposes of these Summary Judgment Motions, treating Hepatitis with Interferon is a serious medical need. Bender has successfully asserted the violation of a constitutional right.

Bender asserted the violation of a constitutional right, the right was clearly established at the time of the violation, and, for the reasons explained below, on the basis of the summary judgment record it is clear that a reasonable official would have known that the denial of Interferon treatment indeed violated Bender's Eighth Amendment rights. See Gregoire at 417.

For purposes of summary judgment where prison officials are claiming qualified immunity, "the burden remains on the proponent of the immunity to establish the relevant predicate facts, and at the summary judgment stage the nonmoving party is given the benefit of all reasonable inferences." Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000). The Eighth Circuit clarified the issues relating to genuine disputes of fact in the context of qualified immunity:

> In the event that a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground. What must be kept in mind, however, is that once the predicate facts have been established, for the purposes of qualified immunity there is no such thing as a "genuine issue of fact" as to whether an officer "should have known" that his conduct violated constitutional rights. The conduct was either "reasonable under settled law

12

> in the circumstances," or it was not, and this is a determination of law that should be made at "the earliest possible stage in litigation."
>
> We restate for emphasis that whether an officer "acted reasonably under settled law in the circumstances," is a question of law, and not itself a predicate fact. "Predicate facts" include only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions. When there is no dispute among the parties as to the relevant facts ... a court should always be able to determine as a matter of law whether or not an officer is eligible for qualified immunity - that is, whether or not the officer acted reasonably under settled law given the particular set of facts.

Id. (citations omitted). Factual disputes are material if they "might affect the outcome of the lawsuit according to applicable substantive law." Liebe, 157 F.3d at 578. "A material fact dispute is 'genuine' if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Id.

There are no disputes concerning the predicate facts material to the qualified immunity issue in this case. When the predicate facts are construed in the light most favorable to Bender, the facts appear as follows. Bender has Hepatitis. Dr. Regier knew of Bender's Hepatitis in 1998. Interferon is the only treatment available for Hepatitis. Bender has no condition that precludes him from being a candidate for Interferon treatment. Bender did not receive Interferon treatment while incarcerated at the prison.

Because there are no disputed predicate facts, the question then is whether Dr Regier acted reasonably under settled law and in the circumstances of this case. Pace, 201 F.3d at 1056. Dr. Meyer testified that, according to general medical practices, Bender would be considered a candidate for Interferon treatment. (Meyer Depo. at 46-55.) Because Dr. Regier has not identified in the record any reasons why Bender is not a candidate for Interferon treatment, Dr. Regier has not demonstrated that he made a medical judgment to withhold treatment. Therefore, Dr. Regier has not shown that his decision to deny Interferon treatment was reasonable in these circumstances. On the basis of the current record, the only reason Dr. Regier did not cause Interferon treatment to be given to the Plaintiff was the cost of treatment and not any medical reason. Based on the above, Defendant Dr.

13

Regier is not entitled to qualified immunity from Plaintiff's claims for monetary relief in his individual capacity. Plaintiff could have sought treatment in 2000 when he was not incarcerated. That would appear to be a possible mitigation of damages issue for trial resolution. Accordingly,

IT IS ORDERED:
1. That the Motion for Summary Judgment, Doc. 74, is granted in favor of Defendants Doneen Hollingsworth, Jeffrey Bloomberg, Douglas Weber, Owen Spurrell, Robert Dooley, Kelly Pickner, Tammy Doyle, Doug Wynia, Bob Kurly, Kevin Van Meveren, Daryl Slykhuis, Troy Ponto, Amy Berthelsen, Greg Zikes and Rhonda Miller on all Counts of the Complaint.

2. That the Motion for Summary Judgment, Doc. 74, is granted in favor of Defendant Dr. Eugene Regier on Counts II, III, IV and V of the Complaint.

3. That the Motion for Summary Judgment, Doc. 74, is denied as to Dr. Eugene Regier on Counts I and VI of the Complaint.

4. That the Motion for Summary Judgment, Doc. 68, is granted in favor of Defendants Sioux Valley Hospital, Kay Paa and Kay Wilka on all Counts of the Complaint.

Dated this 29th day of September, 2003.

BY THE COURT:

Lawrence L. Piersol
Chief Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Shelly Margulies
DEPUTY

14